# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DOMMINIC CANZONERI,

        Plaintiff,

        v.                  Case No. 26-CV-184

COACHLIGHT COMMUNITIES LLC,

        Defendant.

## DECISION AND ORDER

Before the court is Domminic Canzoneri's Motion for Entry of Default Judgment against Coachlight Communities, LLC. (ECF No. 6.) Canzoneri brought this suit against Coachlight for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* (ECF No. 1.) Specifically, Canzoneri alleges that he applied for a maintenance position at Coachlight's apartment complex, and that Coachlight impermissibly obtained Canzoneri's consumer report under the ruse of verifying a "rental application." (ECF No. 1, ¶¶ 19-63). Coachlight did not answer or otherwise respond to Canzoneri's complaint, and the Clerk entered default on April 23, 2026. Canzoneri now moves for default judgment and seeks an award of statutory and punitive damages as well as reasonable attorneys' fees and costs.

A court may enter a judgment by default when the non-moving party has failed to plead or otherwise defend itself. *See* Fed. R. Civ. P. 55. "A default judgment

establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (citing *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)). Once default is established, however, "the victor must still prove up damages." *Shenzhen Huajie Tech. Co. v. Shenzhen Leyibei Tech. Co.*, No. 25-2659, 2026 LX 244469, at *5 (7th Cir. Apr. 29, 2026); *see also In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004) (explaining that the plaintiff must establish his entitlement to the relief he seeks). The court then determines with reasonable certainty the proper amount of damages to award. *Dolls Kill, Inc. v. MengEryt*, No. 24-2841, 2025 LX 443489, at *5 (7th Cir. Oct. 30, 2025) (citations and quotations omitted).

The FCRA prohibits the use or obtainment of a consumer report except for permissible purposes. *Persinger v. Southwest Credit Sys., L.P.*, 20 F.4th 1184, 1195 (7th Cir. 2021). A willful violation of the Act entitles a consumer to statutory damages "of not less than $100 and not more than $1,000" and "such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n(a); *see also Persinger,*  20 F.4th at 1195. A violation is willful if it is committed with actual knowledge or reckless disregard for the FCRA's requirements. *Id*. A defendant's conduct does not amount to willfulness if its reading of the statute was not objectively unreasonable. *Heyer v. Experian Info. Sols. Inc.*, No. 19-C-15, 2019 U.S. Dist. LEXIS 111030, at *8 (E.D. Wis. July 2, 2019) (citing *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)).

2

Canzoneri alleges that Coachlight willfully committed four violations of the FCRA: making a false certification to a consumer reporting agency in violation of 15 U.S.C. §1681b(b)(1); failing to disclose to Canzoneri that a consumer report would be obtained for employment purposes in violation of 15 U.S.C. §1681b(b)(2)(A)(i); failing to obtain Canzoneri's authorization in violation of 15 U.S.C. §1681b(b)(2)(A)(ii); and taking an adverse employment action (in this case, not hiring Canzoneri) without providing Canzoneri an opportunity to challenge the consumer report in violation of 15 U.S.C. §1681b(b)(3). Canzoneri seeks the statutory maximum of $1,000 for each violation, totaling $4,000 in statutory damages. He further asks for $40,000 in punitive damages and $21,052.94 to cover reasonable attorneys' fees and costs. (ECF No. 6 at 1.)

Coachlight's conduct must have been willful in order for Canzoneri to be eligible for statutory and punitive damages. *See* 15 U.S.C. § 1681n(a). Here, Canzoneri alleges that after he submitted a job application with Coachlight, he was notified by a consumer reporting agency that his consumer report was furnished as part of his "rental application." (ECF No. 1, ¶¶ 25-28.) Although Canzoneri applied to be a maintenance worker at Coachlight's apartment building, he did not apply to rent an apartment. (ECF No. 1, ¶ 29.) Canzoneri further states that Coachlight did not disclose its intent to obtain a consumer report nor received his authorization to do so, and that he was not provided a chance to dispute the report before Coachlight decided to not hire him. (ECF No. 1, ¶¶ 31-38.)

The FCRA makes clear the disclosure, certification, and authorization requirements when using a consumer report for employment purposes. *See* 15 U.S.C. § 1681b(b). Whether Coachlight acted knowingly or recklessly, a plain reading of the statute renders its conduct objectively unreasonable, and thus willful. *See Harris v. RHP Venture Holdings, LLC*, No. 23-cv-3362-SMY, 2024 U.S. Dist. LEXIS 120476, at *3 (S.D. Ill. July 9, 2024) (finding a willful violation where plaintiff alleged defendant denied employment without providing a copy of the consumer report); *Souvigny v. Wells Fargo Home Mortg., Inc.*, No. 15 C 07465, 2016 U.S. Dist. LEXIS 99875, at *25 (N.D. Ill. Apr. 15, 2016) (finding a willful violation where defendants accessed plaintiff's credit report without a permissible purpose); *Groshek v. Great Lakes Higher Educ. Corp.*, No. 15-cv-143-jdp, 2015 U.S. Dist. LEXIS 154360, at *8 (W.D. Wis. Nov. 16, 2015) (finding plaintiff asserted sufficient circumstantial facts to adequately allege willful violations of the FCRA); *Bonner v. Home123 Corp.*, No. 2:05-CV-146 PS, 2006 U.S. Dist. LEXIS 37922, at *39 (N.D. Ind. May 25, 2006) (finding a willful violation where plaintiff alleged defendants improperly accessed their credit information); *see also Frazier v. Vintage Stock, Inc.*, No. CIV-15-550-D, 2016 U.S. Dist. LEXIS 163529, at *19 (W.D. Okla. Nov. 28, 2016) (noting that ignorance of the FCRA and lack of intent to violate the Act did not mean that the employment-related violations were not willful).

Consequently, the court will award Canzoneri the statutory maximum of $1,000 for each of the four violations committed under the FCRA. *See Harris,* 2024 U.S. Dist. LEXIS 120476, at *3 (awarding $2,000 in statutory damages for violations of 15

4

U.S.C. § 1681b(b)(1) and 15 U.S.C. § 1681b(b)(3)); *Johnson v. Commonsense Mortg., Inc.*, No. 05-C-853, 2008 U.S. Dist. LEXIS 133376, at \*3 (E.D. Wis. Feb. 29, 2008) (finding a $1,000.00 statutory damage award reasonable); *see also Frazier,* 2016 U.S. Dist. LEXIS 163529, at \*20 (granting total statutory damages of $2,000 for violations of § 1681b(b)(3)(A)(i) and § 1681b(b)(3)(A)(ii) "due to Defendant's cavalier use of consumer reports for employment purposes").

As to the additional $40,000 in punitive damages, however, the violations asserted and the ultimate harm alleged do not warrant the amount requested. Punitive damages serve to punish unlawful conduct and to deter its repetition. *Bmw of N. Am. v. Gore*, 517 U.S. 559, 568, 116 S. Ct. 1589, 1595, 134 L.Ed.2d 809, 822 (1996). The amount awarded, however, must comply with principles of due process; few awards exceeding a single-digit ratio will be justified. *Stewardson v. Titus*, 126 F.4th 1264, 1273 (7th Cir. 2025) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524, 155 L.Ed.2d 585, 605 (2003).

Canzoneri requests punitive damages equal to ten times his statutory damages, a ratio that due process reserves for the most egregious sorts of misconduct. Yet his conclusory allegations of harm fall far short of satisfying his burden to "prove up," *Shenzhen*, 2026 LX 244469, at \*5, an entitlement to such an extraordinary punitive damages award. *See, e.g., Gimble v. Coast to Coast Fin. Sols., Inc.,* No. 2:23-cv-10092-SVW-PVC, 2024 U.S. Dist. LEXIS 126982, at \*9 (C.D. Cal. July 17, 2024) (declining to award punitive damages under the FCRA where plaintiff did not establish her entitlement to further relief). Canzoneri attempts to support his $40,000

request by pointing to "recently awarded substantial punitive damages regarding a far less egregious FCRA violation." *See Rivera v. Allstate Ins. Co.,* No. 10 C 1733, 2017 U.S. Dist. LEXIS 7974, at *31 (N.D. Ill. Jan. 20, 2017), *vacated on other grounds*, 913 F.3d 603 (7th Cir. 2018). But the punitive damages awarded there were only $3,000.

Courts commonly decline to award punitive damages in FCRA cases. *See, e.g., Frazier,* 2016 U.S. Dist. LEXIS 163529, at *23 (explaining that in light of "substantial" statutory damages of $2,000, additional award of punitive damages was not necessary or appropriate); *see also Harris,* 2024 U.S. Dist. LEXIS 120476, at *3 (declining to award punitive damages under the FCRA in the context of default judgment); *Boyle v. Karmacheck, Inc.,* No. 22-cv-04724-TSH, 2022 U.S. Dist. LEXIS 218966, at *22 (N.D. Cal. Oct. 27, 2022) (same); *Rosco v. Advantage Grp.*, No. 2:15-CV-325-RMP, 2019 U.S. Dist. LEXIS 27757, at *8 (E.D. Wash. Feb. 20, 2019) (same).

Nonetheless, considering the relevant circumstances here, the court finds that punitive damages are appropriate to deter future violations. Coachlight's conduct, although giving rise to multiple violations of the FCRA, emerged from a single act. On the facts provided, and in light of the statutory damages already awarded, an award of $40,0000 would be not only grossly excessive but violative of due process. A further award of $1,000 in punitive damages is sufficient to deter future FCRA violations.

Finally, under the FCRA, Canzoneri may recover attorney fees and costs. 15 U.S.C. § 1681n(a)(3). "No precise formula exists for determining a reasonable fee." *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019). A typical

approach employs the lodestar method, which multiplies the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id.* The court may then adjust that figure to account for the complexity of issues involved, degree of success obtained, and the public interest advanced by the litigation. *Id.* District courts have wide discretion in determining the appropriate amount of attorney's fees and costs. *Id.* (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999)).

Canzoneri seeks judicial approval of $20,429.00 in attorney fees and costs in the amount of $613.94. He claims two attorneys and a paralegal worked over 41.3 hours at billable rates of $550.00, $600.00, and $280.00, respectively. (ECF No. 7 at 10.) Canzoneri supports his requested billable rate by citing the attorneys' experience (ECF No. 8), their billable rate when litigating an FCRA claim in Missouri state court (ECF No. 8-1), and recent fees awarded in this district. *See, e.g., Smith v. Esports One, Inc.*, No. 23-cv-1418-pp, 2026 LX 159914, at *2 (E.D. Wis. Mar. 30, 2026) (finding that $500 and $325 an hour were reasonable rates for attorney fees). He also notes that two hours of attorney work was "voluntarily eliminated." (ECF No. 7 at 10.) Canzoneri does not, however, provide the court with any sort of billing record beyond stating the total hours worked on the case.

As an initial matter, the court must assess whether the requested hourly rates are reasonable. A reasonable hourly rate is determined by the local market rate for the attorney's services. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). The best evidence to support the market rate is the attorney's actual billing rate for similar work. *Id.* Here, where Canzoneri's counsel has not provided evidence of any

actual fee-paying clients, the court must look to "the next best evidence" of what similarly experienced attorneys charge or evidence of fee awards received in similar cases. *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012); *see also Curtis v. Stone Ridge Mkt., LLC*, No. 20-CV-46, 2020 U.S. Dist. LEXIS 261012, at *3 (E.D. Wis. Apr. 28, 2020) (plaintiff's counsel did not establish his actual billing rate because he "offers no evidence that he has ever sent a client a bill reflecting that rate, much less that any client ever paid him for work at that rate"). Canzoneri provides this by supplying an order approving a $550 hourly rate for his attorney in a separate FCRA case. (ECF No. 8-1 at 4.) The court thus finds that $550 and $600 are reasonable hourly rates for the two attorneys that worked on this case. *See Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012).

The requested rate of $280 an hour for paralegal work, however, is not only unsupported but contradicted by Canzoneri's own evidence. *See* ECF No. 8-1 at 4 ("The Court finds $100.00 per hour for paralegal services to be reasonable and customary"). Canzoneri does not justify the $280 billing rate beyond citing the paralegal's seven years of experience. (ECF No. 8 at 4.) Accordingly, the court finds that $100 per hour is a more reasonable rate for the hours expended by the paralegal and is supported by Canzoneri's own evidence from past fee awards. *See, e.g., McCabe v. Tire Web, LLC*, No. 23-cv-459-pp, 2024 LX 40976, at *6 (E.D. Wis. Dec. 26, 2024) (reducing paralegal fees where plaintiff's counsel did not support requested rate with evidence); *see also Johnson*, 668 F.3d at 933 ("It is the fee applicant's burden to

establish his or her market rate; if the applicant fails, the district court may make its own rate determination").

More problematic, though, is the lack of detailed records to support the reasonableness of the hours expended. "District courts, entrusted with the task of ordering an unsuccessful litigant to pay the reasonable attorney's fees of his opponent, may properly demand that a claim for such fees be fully supported by accurate and detailed records. When it is not, the request may be denied." *Xinyue Hippe v. Cir. City Corp.*, No. 25-cv-298-pp, 2025 LX 440087, at \*6-7 (E.D. Wis. Oct. 20, 2025) (citing *Vocca v. Playboy Hotel of Chicago*, Inc., 686 F.2d 605, 608 (7th Cir. 1982)); *see also Montanez,* 755 F.3d at 556 ("District courts have broad discretion to strike vague or unjustified billing entries."). Canzoneri has at least anchored his attorneys' billable rates in evidence supplied to the court. *See* ECF No. 8. But his fee petition is inadequate; Canzoneri does not document even the general nature of the hours billed, let alone provide sufficient detail to help ascertain what tasks the attorneys were performing and whether they were reasonable and necessary expenditures of time.

In light of the short and uncomplicated procedural history of this case and the absence of detailed billing records, the hours expended are unreasonable. It took only three months from the start of this suit for Canzoneri to file his motion for default judgment. But that was not three months of motions, briefs, discovery, or settlement discussions. It was three months largely spent waiting for an answer that never came. Canzoneri did little beyond routine procedural filings. These sorts of trivial actions—

with Canzoneri's attorney having "litigated over 500 individual FCRA cases" (ECF No. 8 at 2)—should have been able to resolve with minimal time. Indeed, one reason an experienced attorney can justify a higher rate is because experience fosters efficiency and the ability to complete recurrent tasks in much less time. In the absence of detailed billing records from plaintiff's counsel, the court must resort to a bit of "back of the envelope" math to gauge what is a reasonable number of hours for an experienced attorney to expend in a case like this. This results in an estimate such as:

Meet with client: 1.5 hours

Draft complaint: 2 hours

File complaint: 0.2 hours (paralegal)

Serve complaint: 0.2 hours (paralegal)

Prepare motion for default: 0.1 hours

Prepare motion for default judgment: 2 hours.

Even rounding those estimates up and adding in a few more entries for the little tasks that tend to come up in every case, the hours expended are nowhere close to the 41.3 hours Canzoneri's attorneys assert they spent on this case. Nor do they align with reasonable hours expended in other cases that were resolved at default judgment. *See Smith*, 2026 LX 159914, at \*5 (noting that "as many as 31.3 hours is reasonable to obtain a default judgment under more typical circumstances"); *Classen v. Ali's Invs., LLC*, No. 23-CV-1369-JPS-, 2024 U.S. Dist. LEXIS 173236, at \*18 (E.D. Wis. Sep. 25, 2024) (finding 17.8 hours spent on the case "a reasonable expense of

hours"); *Burr v. McNeil & Myers Receivables Mgmt. Grp., LLC*, No. 20-cv-566-wmc, 2020 U.S. Dist. LEXIS 222865, at *4 (W.D. Wis. Nov. 30, 2020) (granting attorney's fees for 12 hours of work in Fair Debt Collection Practices action); *Johll v. Premier Recovery Grp., Inc.*, No. 14-cv-113-wmc, 2014 U.S. Dist. LEXIS 72045, at *5 (W.D. Wis. Apr. 30, 2014) (granting attorney's fees for 9.7 hours of work in Fair Debt Collection Practices action).

In the absence of detailed billing records, counsel's claimed hours are excessive. The court may reduce the proposed fee by a reasonable percentage when counsel fails to adequately support their claimed work. *Harper v. City of Chi. Heights,* 223 F.3d 593, 605 (7th Cir. 2000)*; see also Montanez*, 755 F.3d at 557 (affirming reduction of fees where attorneys' expenditure of time could not be explained by the complexity of the facts or the relevant legal doctrine); *Shambaugh & Son, L.P. v. Reichhart*, No. 1:23-CV-213-HAB, 2026 LX 72617, at *37 (N.D. Ind. Jan. 20, 2026) (reducing fees where vague entries made it "impossible to determine" whether the amounts claimed were reasonable and necessary).

The court finds that Canzoneri is entitled to $ 9,202.50 in attorney's fees. This represents a 50 percent reduction in the amount of hours purportedly billed, after adjusting the paralegal rate from $280 to $100. *See, e.g., Habitat Educ. Ctr., Inc. v. Bosworth*, Nos. 03C1023, 03C1024, 04C0254, 2006 U.S. Dist. LEXIS 21922, at *24 (E.D. Wis. Mar. 28, 2006) (reducing the proposed fee by 50 percent when "block billing" prevented the court from evaluating the reasonableness of the hours billed). The 50 percent reduction, still amounting to more than 20 hours, leaves Canzoneri

on the higher end of the range for total work billed in similar cases resolved at default judgment. He may additionally recover $613.94 in costs. *Animal Legal Def. Fund v. Special Memories Zoo*, 42 F.4th 700, 707 (7th Cir. 2022) ("Costs are presumptively awarded to the prevailing party under Federal Rule of Civil Procedure 54(d)."). Accordingly,

**IT IS THEREFORE ORDERED** that Domminic Canzoneri's motion for default judgment (ECF No. 6) is **GRANTED.**

**IT IS FURTHER ORDERED** that judgment be entered against Coachlight Communities, LLC, in the total amount of $14,816.44, comprised of $4,000 in statutory damages, $1,000 in punitive damages, and $9,816.44 in attorney's fees and costs.

Dated at Green Bay, Wisconsin this 8th day of June, 2026.

BYRON B. CONWAY
U.S. District Judge